**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **ANGELA R. BRENIZER-CARNER** | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Civil Action No. 05-1211** |
| | ) | **Judge Lancaster** |
| **JO ANNE B. BARNHART,** | ) | |
| **COMMISSIONER OF SOCIAL** | ) | |
| **SECURITY,** | ) | |
| **Defendant.** | ) | |

**MEMORANDUM AND ORDER**

Gary L. Lancaster,
District Judge.

November 15, 2006

This matter is before the Court pursuant to 42 U.S.C. § 405(g), which authorizes an unsuccessful claimant seeking Social Security disability benefits to obtain judicial review of the final decision of the Commissioner of Social Security denying an application for such benefits. Plaintiff, Angela R. Brenizer-Carner, alleges that the Administrative Law Judge's ("ALJ") decision that she is not disabled, and therefore not entitled to Disability Insurance Benefits, should be reversed because it is contrary to law and unsupported by substantial evidence.

Plaintiff protectively filed an application for Disability Insurance Benefits during the spring of 2002. (R. at 15, 100). After the claim was denied, a hearing was held before the ALJ. On February 25, 2004, the ALJ issued a decision which was not favorable to plaintiff. (R. at 113). In an order dated June 7, 2004, the Appeals Council vacated the decision of the ALJ and remanded the case for further consideration. (R. at 132-134). A new hearing was held on October 5, 2004. (R. at 41). Plaintiff, who was represented by counsel, testified at the hearing. (R. at 43-70). Sam Edelman, an impartial vocational expert, and Dr. Garrett Dixon, an impartial medical expert, also testified at the hearing. (R. at 70-92). On March 18, 2005, the ALJ issued a decision which was unfavorable to plaintiff. (R. at 33). The Appeals Council denied plaintiff's request for review on June 28, 2005, thereby making the decision of the ALJ the final decision of the Commissioner of Social Security with respect to plaintiff's case. (R. at 7). Thereafter, on

September 2, 2005, plaintiff commenced this action against the Commissioner pursuant to 42 U.S.C. § 405(g).

When resolving the issue of whether a claimant is disabled and therefore entitled to Disability Insurance Benefits ("DIB") or Supplemental Security Income ("SSI") benefits, the Social Security Administration ("SSA") uses a five-step sequential evaluation process. The U.S. Supreme Court recently summarized this five-step process as follows:

> If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further. At the first step, the agency will find non-disability unless the claimant shows that he is not working at a "substantial gainful activity." §§ 404.1520(b), 416.920(b). At step two, the SSA will find non-disability unless the claimant shows that he has a "severe impairment," defined as "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." §§ 404.1520(c), 416.920(c). At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled; if so, the claimant qualifies. §§ 1520(d), 416.920(d). If the claimant's impairment is not on the list, the inquiry proceeds to step four, at which the SSA assesses whether the claimant can do his previous work; unless he shows that he cannot, he is determined not to be disabled. If the claimant survives the fourth stage, the fifth, and final, step requires the SSA to consider so-called "vocational factors" (the claimant's age, education, and past work experience), and to determine whether the claimant is capable of performing other jobs existing in significant numbers in the national economy. §§ 404.1520(f), 404.1560(c), 416.920(f), 416.960(c).

*Barnhart v. Thomas*, 540 U.S. 20, 24-25, 124 S.Ct. 376, 379-380, 157 L.Ed.2d 333, 339-340 (2003) (footnotes omitted). In this case, the ALJ determined that plaintiff was not disabled at the fifth step of the sequential evaluation process. (R. at 32). She concluded that plaintiff suffered from chronic myofascial syndrome of the upper trunk and cubital tunnel syndrome of the right hand, which were deemed to be severe impairments under 20 C.F.R. § 404.1520(c). (R. at 32). These impairments, however, did not meet or medically equal an impairment listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. (Id.). The ALJ concluded that plaintiff was unable to return to her past relevant work. (Id.). Nonetheless, she determined that plaintiff could peform a significant range of sedentary work, and that jobs falling within the confines of her residual functional

capacity existed in the national economy. (Id.). Congress has clearly expressed its intent that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive[.]" 42 U.S.C. § 405(g). Therefore, the Court's inquiry is limited to the question of whether the findings of the ALJ are supported by substantial evidence.

In support of her motion for summary judgment, plaintiff makes two distinct arguments. First, she argues that the ALJ failed to properly analyze the medical evidence. (Br. for Plaintiff at 5). Secondly, she argues that the ALJ set forth insufficient reasons for rejecting the credibility of her testimony. (Id. at 9). The Court will proceed to address each argument.

Plaintiff's argument with respect to the alleged inability of the ALJ to properly analyze the medical evidence centers on the assessments made by Dr. Roy Sartori and Dr. Amarish Potnis. (Id. at 5-6). On September 15, 2002, Dr. Sartori reported that plaintiff could occasionally lift or carry 2-3 pounds, stand or walk for one hour or less in an eight-hour workday, sit for 1-2 hours in an eight-hour workday, and that her pushing and pulling abilities were limited in her upper extremities. (R. at 339). Although he reported that she could engage in occasional bending, he indicated that she could never kneel, stoop, crouch, balance or climb. (R. at 340). On October 21, 2002, Dr. Potnis reported that plaintiff could occasionally lift or carry 2-3 pounds, stand or walk for one hour or less in an eight-hour workday, sit for one hour in an eight-hour workday, and that her pushing and pulling abilities were limited in both her lower and upper extremities. (R. at 355). He indicated that she could never engage in balancing or climbing, but that she could engage in occasional bending, kneeling, stooping and crouching. (R. at 356).

At the hearing, Dr. Dixon testified that the restrictions reported by Dr. Sartori and Dr. Potnis were "relatively extreme." (R. at 82). In his view, the reports reflected plaintiff's complaints rather than the objective findings made by the physicians. (R. at 83-84). The Medical Source Statement forms make it clear to the completing physician that the assessment should be based on clinical signs and laboratory findings, and not on the claimant's statements. (R. at 339, 355). Nevertheless, Dr. Sartori noted the following: "states she cannot lift or carry over a few [illegible]." (R. at 339). This notation provides objective support for Dr. Dixon's testimony.

In her decision, the ALJ rejected the purported findings of Dr. Sartori and Dr. Potnis. (R.

at 23-25). In so doing, she noted that all objective diagnostic tests conducted over a three-year period had revealed no significantly abnormal findings to account for plaintiff's complaints. (R. at 29). Relying on Dr. Dixon's testimony, she determined that plaintiff was capable of lifting and carrying ten pounds occasionally and five pounds frequently, that she could stand or walk for five hours in and eight-hour day, and that she could sit for three hours in an eight-hour day. (R. at 32). The ALJ also determined that plaintiff required a sit/stand option at will, that she was precluded from climbing scaffolds and ladders, that she could not reach overhead or forward with her non-dominant upper extremity, and that she needed to avoid hazards like machinery and heights. (Id.). Based on this residual functional capacity, the ALJ determined that plaintiff was unable to perform her past relevant work. (Id.). Nevertheless, she concluded that plaintiff could work as a telephone solicitor, ticket salesperson, or cashier. (Id.). Mr. Edelman's testimony established that these jobs existed in the national economy for purposes of 42 U.S.C. § 423(d)(2)(A). (R. at 90).

The ALJ's determination, of course, conflicted with the opinions of Dr. Sartori and Dr. Potnis. Nevertheless, it is the prerogative of the ALJ to resolve conflicts which exist in the evidence, and to determine which evidence to credit and which evidence to reject. Where there is a lack of clinical data to support the opinions of the claimant's treating physicians, the ALJ is free to reject those opinions. *Newhouse v. Heckler*, 753 F.2d 283, 286 (3d Cir. 1985). In the instant case, the ALJ determined that the findings of Dr. Sartori and Dr. Potnis were not supported by objective medical evidence. (R. at 25, 29). This lack of objective evidence, coupled with the expert testimony of Dr. Dixon, provided the ALJ with substantial evidence upon which to base her decision.

It is true that the limitations noted by Dr. Sartori and Dr. Potnis were inconsistent with the ALJ's assessment of plaintiff's residual functional capacity. As the ALJ explained in her opinion, however, the additional limitations were not credibly established. (R. at 31). In order for a vocational expert's testimony to constitute substantial evidence that the claimant is capable of performing jobs existing in significant numbers in the national economy, the hypothetical question posed by the ALJ must include all of the claimant's impairments. *Ramirez v. Barnhart*, 372 F.3d 546, 552 (3d Cir. 2004). Nevertheless, this standard does not require an ALJ "to submit

to the vocational expert every impairment *alleged* by a claimant." *Rutherford v. Barnhart*, 399 F.3d 546, 554 (3d Cir. 2005)(emphasis in original). Instead, "the ALJ must accurately convey to the vocational expert all of a claimant's *credibly established limitations*[.]" *Id.* (emphasis in original). Consequently, plaintiff cannot prevail merely by demonstrating that the ALJ's hypothetical question to Mr. Edelman did not include the limitations reported by Dr. Sartori and Dr. Potnis. The ALJ based her decision on the expert testimony of Dr. Dixon, which contradicted the findings of Dr. Sartori and Dr. Potnis. "An ALJ may reject a treating physician's opinion outright only on the basis of contradictory medical evidence, but may afford a treating physician's opinion more or less weight depending upon the extent to which supporting explanations are provided." *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999). Since Dr. Dixon's testimony constituted conflicting medical evidence, the ALJ was entitled to rely on that evidence, and to reject the opinions of Dr. Sartori and Dr. Potnis.

The ALJ buttressed her decision with evidence which indicated that plaintiff was not disabled. For instance, the ALJ pointed to a treatment note of Dr. Greg Merti indicating that plaintiff had discharged herself from an occupational therapy program and did not want to return to work. (R. at 19-20, 326). The ALJ relied on the report of an examining psychologist, Dr. Craig Hartmann, to refute plaintiff's allegations of a disabling mental impairment. (R. at 18-19). Dr. Hartmann found plaintiff to be a fully oriented woman with average judgment. (R. at 541). He assigned plaintiff a global assessment of functioning level of 65, which was indicative of only mild symptoms. (R. at 18, 541). Under these circumstances, the Court cannot conclude that the ALJ's determination is unsupported by substantial evidence. Although there is conflicting medical evidence contained in the record, it is emphatically the province of the ALJ to resolve such a conflict. Where the Commissioner's decision is supported by substantial evidence, the Court has no authority to set it aside. This is true even if the Court would have decided the factual inquiry differently. *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999).

Plaintiff also contends that the ALJ erred in finding her testimony to be less than fully credible. (Br. for Plaintiff at 9-12). The ALJ stated that plaintiff "has moved from doctor to doctor, seeking pain medication and alleging the same complaints, despite repeatedly normal objective diagnostic test findings." (R. at 29). "An ALJ must give serious consideration to a

claimant's subjective complaints of pain, even where those complaints are not supported by objective evidence." *Mason v. Shalala*, 994 F.2d 1058, 1067 (3d Cir. 1993). "Where medical evidence does support a claimant's complaints of pain, the complaints should then be given 'great weight' and may not be disregarded unless there exists contrary medical evidence." *Id.* at 1067-1068. Nevertheless, it is important to remember that the dispositive question is not whether plaintiff is suffering from a medical condition, but rather whether she is statutorily disabled. The Court must "make a distinction between the issue of the existence of a medical condition and the issue of the existence of statutory disability." *Kuzmin v. Schweiker*, 714 F.2d 1233, 1237 (3d Cir. 1983). Plaintiff does not argue that any of her impairments meet or medically equal an impairment listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. Therefore, she cannot establish the existence of statutory disability merely by demonstrating that she suffers from a *potentially disabling* medical condition. Instead, it is incumbent upon her to show that her condition *is disabling*.

Under the present circumstances, it is clear that the decision of the ALJ is supported by substantial evidence. Plaintiff's residual functional capacity, as determined by the ALJ, is consistent with the testimony of Dr. Dixon. The ALJ did not disregard plaintiff's impairments. Instead, she simply found those impairments to be less than disabling. (R. at 31). The ALJ properly considered the combined effect of plaintiff's exertional and non-exertional impairments, concluding that plaintiff's ability to perform certain sedentary jobs was impeded by these impairments. (Id.). Although plaintiff contends that the ALJ improperly relied on her involvement in numerous lawsuits as a basis for questioning her credibility, it is clear that the ALJ's references to these lawsuits were a very small part of a comprehensive examination of the circumstances surrounding plaintiff's case. (R. at 20).

Having reviewed the hearing transcript, the Court is concerned about the ALJ's failure to permit plaintiff's attorney to question Dr. Dixon about the disadvantages of being a non-examining physician. (R. at 84-86). Nonetheless, plaintiff does not advance any argument in this Court regarding this issue. The Court will not address it *sua sponte*. Plaintiff's arguments are limited to the ALJ's evaluation of the medical evidence and the discounting of plaintiff's testimony. These issues go straight to the heart of the factfinder's role in the administrative

process, and the Court's role in exercising judicial review is limited. Given the clear mandate from Congress that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive," the Court must affirm the decision of the Commissioner in this case. 42 U.S.C. § 405(g).

AND NOW, this 15th day of November, 2006, IT IS HEREBY ORDERED that plaintiff's motion for summary judgment is DENIED and defendant's motion for summary judgment is GRANTED.

BY THE COURT:

G. L. Lancaster, J.

cc: All Counsel of Record